May it please the Court, my name is Christine Weaver and I am counsel for the plaintiff Ruth Hochberg. I would like to reserve two minutes for rebuttal and also Jeffrey Needle is the amicus curiae counsel and I would like to cede him five minutes. So if I can do my right. Oh my goodness, okay, math is not my strong suit. Good morning. We are here because of a summary judgment grant to Lincare a mere six or seven weeks before trial last year by Judge Shea. Mr. Needle will be addressing for you the legal arguments and I will be addressing for you the legal arguments. I would also like to very briefly talk about the motion to compel because there are three issues here, whether the grant of summary judgment was appropriate, whether the motion to compel should have been granted and whether an award of attorney's fees and costs was appropriate as to that motion to compel. I will very briefly speak about the motion to compel. This is a situation that has to do with attorney-client privileged communications and the court seemed to forget that the letters that were sent to the employer were in the possession of the employer at the time of the depositions. The notes and so forth of Ms. Hochberg were before the defendant at the time of the deposition and Mr. Nelson had asked about whether my client had decided to go to trial. He had discussed a discussion that she had with Ms. Stotts, her supervisor, with an attorney. He also asked if she had spoke about the December 6, 2005 letter to an attorney. Did you deliver that letter on the advice of counsel? This is ER 522. He asked her if she discussed this letter with someone else other than her husband. YNI fact objected. This is ER 523. He kept asking her about and when you have about and you have the actual letters and so forth, it is naturally, it is obviously substance. With that, I would like to move on to the factual issues. Your Honors, there are questions of fact regarding the only requirement and that is whether or not pregnancy was a motivating factor. What is my standard of review on this deposition questions issue? I believe, Your Honor, it is the abuse of discretion. So the district court then looks at these particular questions to ask and determines on a discretionary basis whether they really are attorney-client-privileged questions and thereafter determines when determining whether they are attorney-client-privileged questions whether they ought to give fees. That is correct. And all of it is discretionary. That is correct. What is the abuse then? Well, the abuse is that the case law that the judge relied on and also brought forth by the respondent, Lincare, had to do with where the actual substance of the conversations were not known. And here the actual substance of the conversations are known. It is abusive to say, did you ask? If the substance of the conversations with the lawyer were known, then I don't know how it could be an attorney-client-privileged problem. My worry is that the questions asked were really, did you ever talk to an attorney about it? Did your husband ever talk to your attorney about it? And we're really only finding out if, in fact, an attorney was involved. Not what the attorney said, not what was said to the attorney, reading the questions. Your Honor, when you have the actual documents, though, the case law specifically talks about situations where what is talked about is not particularly known. It is, you know, the courts have stated that did you consult with an attorney, what about litigation? Litigation in a broad sense. Excuse me. And here it's not broad it's incredibly narrow. Did you talk to her about the conversation that you had? How does asking Ms. Hochberg a question about whether her husband talked to an attorney about a letter violate a privilege she holds, an attorney-client privilege she holds? Well, there's also a privilege between the marital community. And the marital community of what the husband and the wife... That's a different privilege. You're talking of a different privilege. Exactly. But what I was concerned about was the fact that here we have letters, here we are asking specific questions about what it is that the client went to an attorney about and did you go to an attorney and did you talk about this specific issue. And the case law is very clear that it has to be broad. Litigation, time, this, that. It's not specifically about a job issue. And I only have a minute and a half left, I think, or two and a half minutes, so I'd really like to move on to the factual issues. This decision you struck with your friend is a little difficult for me to move on to the factual issues. What are we really talking about? Aren't we on summary judgment? We are on summary judgment. Aren't all the factual issues therefore yours? I mean, they're guaranteeing all factual issues on your behalf? That's true, but the district court judge didn't seem to do that. And that is why we are here, because he indicated that there were no issues of fact. When in fact, Your Honors, if you... But in effect, what he was saying is, if there are any issues of fact whatsoever, we're giving them to the plaintiff. But he didn't. Well, which ones didn't he? Well, if you talk about temporal proximity, he did not give that. There was the announcement of the pregnancy in October of 2005, mid to late October of 2005. Ms. Stotts is gone for most of November. That's ER 524. On December 2nd, 2005, Stotts talks to my client about a list of issues over the past several years and told her something was keeping her from getting pregnant. But as I understand it, what you have to prove is, she belongs to the protected class. She was performing according to her employer's legitimate expectations. She suffered an adverse employment action, and then others with qualifications similar to her were treated more favorably than was she. Now, the judge doesn't go on each one of those, but the judge is focusing in on all the facts and whether the particular witnesses involved in the situation are appropriate to make those determinations. Well, Your Honor, as far as with our witnesses, he gave all of the benefit of the doubt to the defendants' witnesses who were of equal level to my client. They were not in a supervisory position except for Ms. Stotts, and gave absolutely no weight to the actual people who, which was admissible, and he admitted that. The testimony that she knew her job, knew what she was doing, these people were not doing her job, as was alleged. Ms. Stotts claimed that everybody and their mother did my client's work except for my client. And these people that she claimed that actually did her work vehemently deny it. And that is a huge factual issue. And why you would give Marsh and Geigler more credence than the people that actually worked under my client on a daily basis is beyond me. That is making a factual determination. That is determining the credibility of witnesses, which is clearly within the province of the jury or the fact finder. And that is not what happened here. I will now give five minutes to co-counsel, and I will reserve a minute seven. Well, we'll see if he gets done in five minutes. I will try to do less than five minutes, if at all possible. May it please the Court, my name is Jeffrey Needle. I appear as amicus curiae for the Washington Employment Lawyers Association. The shifting burdens of McDonnell Douglas were originally intended to assist plaintiffs in surviving summary judgment and to get to trial. When I tell that to new lawyers, they generally laugh, because they know that the shifting burdens of McDonnell Douglas were otherwise meritorious cases sometimes go to die. And there's now good scholarship actually which supports that, and I cited that in my brief. The shifting burdens were not intended to be applied rigidly, mechanistically, or mechanically. They are a guideline. There is only one dispositive question under Title VII. Was an illegal motivation, was an illegal reason, a motivating factor in the decision to take adverse employment action? There are other relevant questions, Your Honor. Legitimate expectations of the employer is a relevant question. Being treated differently than similarly situated others, whatever that may mean under the sun, is a relevant question. Is the defendant's articulated reason worthy of belief is a relevant question. You misapply the shifting burdens when you transform the relevant questions into dispositive questions. And that's exactly what this Court did, and I'm willing to say quite frankly, it's not uncommon to see lots of courts do it. The question is, was it a motivating factor? It doesn't really matter whether or not you called it. It doesn't take any particular type of evidence to prove it. The statute doesn't say anything about that. The question is, it doesn't matter whether you label it as pretext or you label it a prima facie case. It doesn't matter whether it's direct. It doesn't matter whether it's circumstantial. None of that makes any difference, and if you apply those rigid rules, then you're misapplying the McDonnell-Douglas formulation, and that's exactly what the trial court did. You cannot ignore evidence just because it doesn't fit into the neat construct, which is an artificial construct created by the court. There was only one fundamental question, and that's whether or not an illegal reason was a motivating factor, and the court didn't do that. The court said, you've got to prove all these other things, and unless you prove all these other things, you lose. Plaintiff doesn't have to prove that A, there was a motivating factor, and also that he or she was meeting the legitimate expectations of the employer. Well, even if the court, in attempting to follow the construct on the McDonnell-Douglas, went through the various steps that are articulated, what is the evidence in the record that gives rise to a genuine issue of material fact on the issue of whether the pregnancy of Ms. Hochberg was a motivating factor? That's the question. And, of course, counsel says that, in fact, there was evidence to show that she was meeting legitimate expectations of the employer, that she – that, in fact, the articulated reason was false, and that there – and that she was being treated differently than similarly situated others. She says that there's a factual question on those things, but there is other evidence that the court never even considered, and it never even considered that evidence because it went through the McDonnell-Douglas formulation like a flowchart. It only considered the questions relevant to the McDonnell-Douglas formulation without considering – It doesn't have to be more than she disagrees. I mean, if it's simply she disagrees, then you would never have summary judgment. No. There has to be a factual question. And she – What factual question is there? I think there's a factual question. She presented evidence as to whether or not she was adequately performing the job. She presented evidence that she never received any discipline prior to the time she was – she announced her pregnancy. She presented evidence about whether or not there was a close temporal proximity to the discipline after – and the way she was treated after she announced her pregnancy. She presented evidence, which the district court seemed to dismiss, concerning the ability of her performance. The district court said it was opinion evidence, admitted the opinion evidence, and then didn't give credit to that evidence. It gave credit to the defendant's evidence. Viewing the defendant's evidence in the light most favorable to it instead of the other way around. This is, in my judgment, a perfect instance where the court has misapplied the McDonnell-Douglas formulation, where it has transformed those relevant questions into dispositive questions. And the court can't do that. Plaintiff doesn't have to show that the reason that they gave was false and that the true reason was pregnancy. That's what the district court explicitly said. And plaintiff never has to show that. Even if they're right. Even if she wasn't adequately performing. That doesn't mean plaintiff loses. The statute doesn't say that. The statute doesn't say only people who are adequately performing can succeed. Moreover, there can be multiple reasons for discrimination. Plaintiff only has to prove that one of them was illegal. So you can have someone who wasn't satisfactorily performing and still win your case from plaintiff's point of view. But you do have to present some evidence after the defendant has suggested a legitimate reason for making the determination that it did. You do have to present some evidence to suggest that it was pre-temp. That's what we're really talking about here. Your Honor, I disagree that that's true. You don't have to present evidence of pre-temp. You just have to present. That's a rigid application of the formulation, Your Honor. All you have to do is show motivating factor. It doesn't matter whether you call it pre-temp. You don't have to show that they're right and their reason is correct and the other reason is incorrect. You just have to show that it was one reason, it was an illegal reason and it motivated them. That's all you have to show. Thank you for your time. I'm sorry it took so long, Your Honor. Thank you. Counsel. Good morning. May it please the Court, John Nelson, Foster Pepper on behalf of the appellee Lynn Kerr. It is not fair to say that Judge Shea committed error by applying the McDonald-Douglas burden-shifting analysis or by reviewing the summary judgment record for substantial and specific evidence of pretext in the third stage. Fifteen decisions of this Court have applied that analysis since 2007. Three have applied substantial and specific analysis since April of this year. And in fact, while it's not fair to say invited error, it is of course a question of law reviewed de novo by this Court. It is noteworthy that the plaintiff's briefing before the district court expressly and directly approached McDonald-Douglas and advised the Court that it needed to review the record for substantial and specific evidence and that's at pages 284 through 288 of the excerpts of record. But this Court need not decide whether to abandon McDonald-Douglas or substantial and specific because even if the Court reviews the record for some evidence of motivating factor as suggested by amicus, the record doesn't support a jury question as to whether there was, whether pregnancy was a motivating factor. I would note that the Sorrell decision from this Court, Judges Dorothy Nelson, Reidenhart and Oberdorfer from the District Court of D.C. issued in March of 2008 at 518 F. 3d 1097, suggests that typically we apply the familiar McDonald-Douglas burden-shifting framework for Title VII and 1981 claims. A plaintiff may alternatively proceed by simply producing direct or circumstantial evidence demonstrating that a discriminatory reason was more likely than not motivating the employer. Here, the parties and the Court below applied McDonald-Douglas framework and so do we as well. So perhaps this sort of anomaly of how so many courts have applied McDonald-Douglas and substantial and specific evidence in Title VII cases and yet there's these Cornwall cases and others that say, well, you can also proceed simply by presenting evidence that the unlawful reason was a motivating factor is answered by the Sorrell case. The plaintiff has the option of proceeding under one analysis or the other. But if the plaintiff chooses McDonald-Douglas and advocates substantial and specific evidence, below, without suggesting any other analysis should be applied, I think it's difficult to find that a district court would err, commit error, by applying that analysis. The district court very clearly required evidence of others similarly situated being treated more favorably. But don't we, that's only one way to do it. I think, for instance, in this case, we say, well, you either have to show that others similarly situated were treated more favorably or some other indicia of discrimination. But it seemed to me here, he said, well, there's some factors and he failed on factor four and factor four was to show that there were others similar. Sometimes you could be discriminated or demoted when there's nobody else similarly situated. Of course you'd fail number four. That is, that's correct, Your Honor. You can. And the district court did review the record evidence for evidence of any other similarly situated but un-pregnant people who were dissimilarly treated and it was a disparate impact claim. And there was no evidence and that can't genuinely be disputed on this record. So the question before this court, as it would be before the court, before the district court would be, was there some other evidence from which a reasonable jury could find by a preponderance of the evidence that the pregnancy was a motivating factor? And here, Your Honor, a reasonable jury could not ignore undisputed evidence established largely by the plaintiff's own testimony and admissions and deposition that preclude that finding. And principally, Your Honor, the plaintiff testified, as did Ms. Marsh, that LendCare's Spokane facility employs about 60 people, all of whom are women of childbearing age. There had been lots of other pregnancies in LendCare. LendCare applies or facilitates working mothers through use of a liberal flex time schedule, which the plaintiff herself had employed. Ms. Marsh testified and the plaintiff did not dispute that when people, when a woman announces her pregnancy in LendCare's facility, people are generally happy. That's a celebratory event. And in fact, the plaintiff testified that when she told her manager, Ms. Stotts, that she was pregnant, Ms. Stotts was happy and excited for her. There's no history and no evidence, 60-person facility, all of whom are subject to being in the pregnant, the protected class at any given moment, there's no history of any animus or negative attitude towards pregnancy whatsoever. Moreover, what the plaintiff's analysis requires this Court and would require a jury to do is to not only ignore that fact, the huge lurking elephant under the table, but to also ignore the fact, undisputed fact, that the plaintiff suffered three serious defaults in her performance between the time she announced her pregnancy and the time she was demoted for the third default. The first being the fact of the Don Johnson debacle. Mr. Johnson was an employee directly under the plaintiff's supervision. It was her job to make sure he was doing his job. And in fact, the record evidence contains undisputed testimony by the plaintiff that twice in the previous year she had been counseled by Ms. Stotts. You need to get into your PAC, patient account coordinators. You need to get into their accounts and leave specific notes about how they should work their accounts. In fact, Mr. Johnson came to work under the plaintiff's supervision for 60 days. He didn't open up his accounts. He was doing a different job entirely on his own time. He didn't do one bit of work for LendCare. And the plaintiff didn't know it because she hadn't reviewed a single one of his accounts over that period of time. And Ms. Marsh, another supervisor who had done that job and was described by the plaintiff herself as the plaintiff's own close friend and confidant, testified that that reflects an abject failure of the plaintiff to do her own job. After that, she was counseled on December 2nd about a number of ways in which she was not meeting Ms. Stotts' expectations. This is eight weeks after the pregnancy announcement, not the next. Let me interrupt. With Ms. Stotts' expectations and the court in applying McDonnell-Douglas stated the test, the second part of the prima facie case, the issue of whether she was performing to her employer's legitimate expectations, cites the Villiarmo, I'm sure I've mispronounced that. But in that case, they didn't use that test exactly. It was whether the employee was qualified for the position. And that's often stated, isn't it, in cases regarding Title VII in this circuit? The test is stated a couple of ways, the prima facie case test. Now, Appellant, or maybe it's Amicus, argues that those are somehow conflating the pretext or the ultimate question, I should say, with the determination of whether the plaintiff makes a prima facie showing. Well, Your Honor, you're absolutely correct. The Ninth Circuit opinions describe that second part of the case. Are they different? I believe that the meeting legitimate expectations at the time of the adverse employment consequence is the appropriate formulation where there's a claim of temporal proximity, where it's not just a, where the claim is based upon a temporal status. And here, of course, pregnancy is by definition of limited duration, at least to this point. And therefore, it will by definition involve a temporal proximity to any adverse employment consequence. And in fact, if this Court was going to adopt a position by Amicus that temporal proximity in and of itself, without any other evidence, can support a finding, even ignoring all of the other evidence, such as legitimate expectations, et cetera, then the consequence would be that any plaintiff who becomes pregnant gets a jury trial if they suffer an adverse employment consequence. Because there will, by definition, be a temporal proximity between the condition, the protected status, and the adverse employment consequence. And if that alone creates a jury question, even though undisputed evidence that she was not meeting legitimate expectations, that there are no other similarly situated qualified individuals or similarly situated individuals who didn't suffer the same sort of discipline, that there is no history of animus in the workplace or environmental discrimination on the condition, even ignoring all of those other undisputed facts, you've got to go to that pregnancy was a motivating factor. And that's really where it comes down to, with respect to the question that you asked Judge Pro, what other evidence was there? The answer was temporal proximity. In this case, a reasonable jury cannot ignore all of those other undisputed facts, because ultimately motivating is a critical word. The plaintiff has to produce, even if you ignore substantial and specific evidence and all of the case law that requires that, and just go to Rule 56, specific facts in response, in opposition to a summary judgment motion, even if you just require some specific facts, the plaintiff has to produce some evidence from which a reasonable jury could conclude a state of mind, motivation, that the pregnancy had some motivation. And that's the evidence that is lacking in this record. Briefly with respect to the motion to compel, the fact of the matter is that the plaintiff's counsel was trying to shield, use the attorney-client privilege to shield the fact that the plaintiff was being coached in writing these letters that she wrote throughout the period of her internal complaint, and shield that from discovery. And that's not legitimate. And it's really not fair. You know, if a plaintiff, if an employee goes to a lawyer and says, I believe I'm being discriminated against, the lawyer could write the letter, the lawyer could write the letter that plaintiff's counsel wrote for plaintiff directly to the defendant and say, we believe that you're discriminating against our client. This has to stop. That would be, the substance of the communication would be right in front of the defendant, and it would not waive the privilege as to the communications between the employee and the attorney. Here the questions were crystal clear. I was not asking, what did you tell your lawyer? What did your lawyer tell you? I was simply asking, did you talk to a lawyer before you wrote this letter? We provided Ms. Weaver four cases in a letter trying to resolve this without involving the court. We cited those exact same cases to the district court. The district court relied on those cases in granting our motion, and relied on those cases in finding that no reasonable advocate could have, having reviewed those cases. I believe that the questions asked were, in fact, legitimately subject to the attorney-client privilege. Not only that, the court's order reflected an exercise of discretion in reviewing the fee request and reducing that amount, and it is an abuse of discretion standard, and there has been no abuse of discretion shown. Are there other questions, Your Honor? No, thank you. Thank you. Given counsel used all the time, case 0835410, Hochberg v. Lincare, is now submitted, and the court is adjourned.
judges: Canby, Smith N. R., Pro